MCGUINNESS & ASSOCIATES
JOSEPH G. McGUINNESS – State Bar No. 115983
JEFFREY S. FLASHMAN – State Bar No. 161186
2785 Pacific Coast Highway, Suite E #729
Torrance, California 90503
Telephone: (310) 792-0495
Email: jeff@mcguinnesslawgroup.com

Attorneys for Plaintiff
*Rapid Building Solutions, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| RAPID BUILDING SOLUTIONS, LLC, a Florida limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HISCOX INSURANCE COMPANY INC., an Illinois corporation, HISCOX INC., a Delaware corporation, its general agent, d/b/a Hiscox Insurance Agency; and DOES 1 – 200, inclusive,<br><br>Defendants. | Case No. 8:25-cv-00016-DOC−JDE<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT, and**<br><br>**2. TORTIOUS BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Rapid Building Solutions, LLC ("Rapid" or "Plaintiff"), for causes of action against Hiscox Insurance Company Inc.; its general agent, Hiscox Inc.; and Hiscox Insurance Agency, the name used by Hiscox Inc. to conduct business in California (collectively, "Hiscox" or "Defendant") alleges and states that:

## NATURE OF THE ACTION

1. Defendant issued a liability insurance policy (the "Policy") to Creative Storage Designs ("Creative") of which Rapid was an additional insured. Thereafter, claims were brought against Rapid by Indian Harbor Insurance Company and its claim representative, AXA XL, (collectively "Indian Harbor"), as subrogee and assignee of the rights of Indian Harbor's insured, Swinerton Builders, Inc. ("Swinerton"), including demands for mediation and a complaint and demand for arbitration. The claims contained allegations and sought relief that was covered or, at a minimum, was potentially covered, by the Policy. Defendant breached the Policy by refusing to defend Rapid in the actions. In addition, Defendant's handling of Rapid's claims and the denial of the Policy's benefits to Rapid was unreasonable and without good cause, such that Defendant tortiously breached the implied covenant of good faith and fair dealing.

2. Plaintiff also seeks damages for breach of contract against Defendant who has failed and refused to meet its obligations to pay (1) Plaintiff's costs and expenses of investigation and defense and (2) for legal liabilities that have been, and may in the future be, imposed by law upon Plaintiff. In addition to, or in the alternative, Defendant has engaged in other breaches of its insuring obligations, all in connection with the causes of action and demands asserted against Plaintiff by Indian Harbor, as subrogee and assignee of the rights of Swinerton.

## PARTIES

3. Hiscox Insurance Company Inc. is a Chicago, Illinois domiciled insurer admitted or licensed to do business in all 50 states and the District of Columbia.

4. Hiscox Inc. is a Delaware corporation that does business in California as Hiscox Insurance Agency.

5. Rapid is a self-storage design and construction limited liability company organized under the laws of the state of Florida with a principal place of business in Ocoee, Florida.

6. The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants named herein as DOES 1 through 200 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and based thereon alleges that Defendants DOES 1 through 200, and each of them, are legally responsible to Plaintiff for the relief sought herein and have liability to Plaintiff for all matters alleged herein.

7. Plaintiff is further informed and believes and based thereon alleges that all Defendants and DOES 1 through 200, and each of them, are and were the agent, servant, employee, principal, master, employer, partner and/or joint venturer of, and/or with, every other Defendant and doing the acts complained of herein, was acting within the scope of the relationship existing among Defendants. Plaintiff will ask leave to amend this complaint to show the true names and capacities of the Defendant DOES when the same have been ascertained. Defendants Hiscox Insurance Company Inc. and DOES 1 through 100 shall be referred herein collectively as "Hiscox."

8. This complaint embraces and shall be deemed to embrace any and all insurance policies issued by Defendant providing coverage or potential coverage to Rapid with respect to the Demands (as defined below).

**JURISDICTION AND VENUE**

9. Defendant is licensed to do business, and is doing and transacting business, in the State of California. The conduct giving rise to this action took place, in whole or in part, in the City of Aliso Viejo, in the County of Orange, California. This action is based, in substantial part, on the breach of an insurance contract concerning a California construction project and is based on violations of California law. The matter was originally filed in state court and removed to this Court by Defendants, which assert diversity jurisdiction as the basis for removal.

10. Venue is proper because the conduct giving rise to this action took place, in whole or in part, in the City of Aliso Viejo, in the County of Orange, California by the Defendant and because the events and matters alleged herein concerned a policy of insurance pertaining to a construction project and real and/or personal property located within the County of Orange, California.

11. This action was removed to federal court by the defendants. Plaintiff does not assert federal jurisdiction.

**FACTUAL BACKGROUND**

12. On or around December 6, 2018, Rapid entered into a master subcontract agreement (the "MSA") with Swinerton.

13. On or around March 1, 2019, Rapid entered into a work order to the MSA (the "Work Order", and, together with the MSA, the "Agreement") with Swinerton under which Rapid was to perform fabrication and installation of structural metal framing on five single and two-story buildings at the JDA Self-Storage project at 4 Orion, Aliso Viejo, California 92656 (the "Project").

14. Rapid hired Creative to prepare the drawings for the Project pursuant to the Rapid's standard subcontract ("Creative Contract"). Rapid and Creative entered into Rapid's standard subcontract. A true and correct copy of the form of the standard subcontract is attached hereto as Exhibit A. As will be discussed herein, the specific contract for this Project cannot be located, but Rapid personnel will attest that Creative executed a contract in the form of Exhibit A.

15. As required by the Creative Contract, Rapid was an additional insured under the Policy.

16. Thereafter, Swinerton alleged that Rapid breached the terms of the Agreement by, among other things: failing to properly install the light gauge framing; installing walls out of alignment; failing to install anchors, hold downs, and straps; failing to weld the key structural components; and failing to crimp the roof decks, such alleged acts of which allegedly caused damage to the Project. With respect to the work performed by Creative, the following issues arose

leading to significant remedial work to both Rapid's work, and other components of the Project: (1) the Creative drawings specified the incorrect materials, as the Rapid's Project contract required galvanized steel but the drawings called for red oxidized steel; (2) the dimensions of steel set forth in the drawings did not meet the Project specifications, requiring significant effort to cut material delivered to the Project to conform with the architectural plans; (3) the drawings failed to properly identify the connections between Rapid's structural steel and other Project components such as roofs and decks, and those components were damaged by the failure to use the correct connection mechanisms; and (4) the drawings did not properly identify certain construction components, causing significant portions of the Project to be constructed in a manner the violated the applicable building codes and created significant safety issues. As a result of these defects in the Creative drawings, major components of the Project had to be removed so that work could be corrected, and then replaced.

17. Swinerton defaulted Rapid on or about April 28, 2020, and Rapid contested the alleged default and breaches. Swinerton hired subcontractors to complete and replace the work contemplated in the Agreement.

18. Indian Harbor, as subrogee to the rights of Indian Harbor's insured, Swinerton, brought a demand for mediation against Rapid on September 9, 2021 (the "Initial Mediation Demand") attached hereto as Exhibit B. The Initial Mediation Demand alleges that Rapid breached the terms of the Agreement by, among other things: failing to have adequate manpower to perform the work on the Project; failing to maintain the schedule for the erection of brace frames and installation of the light gauge metal framing and metal decks; and failing to properly install light gauge metal framing and metal decks to contract specifications. The Initial Mediation Demand sought damages in excess of $10.6 million.

19. On September 27, 2021, McDonald Hopkins LLC ("McDonald Hopkins"), counsel to Rapid, acknowledged receipt of the Initial Mediation Demand.

20. On November 2, 2021, McDonald Hopkins and its co-counsel, McGuinness & Associates (together with McDonald Hopkins, "Counsel") requested policy and claim documentation from counsel for Indian Harbor related to the Initial Mediation Demand.

21. On March 7, 2022, Indian Harbor brought a subsequent demand for mediation against Rapid (the "Subsequent Mediation Demand") attached hereto as Exhibit C, this time alleging damages in excess of $13 million.

22. On April 1, 2022, Rapid tendered a request for coverage to Defendant.

23. On July 1, 2022 and October 19, 2022, Counsel received letters from Crawford and Company ("Crawford"), Hiscox's third-party administrator, requesting additional information from Rapid.

24. On November 30, 2022, Counsel provided Crawford with responses and documents responsive to Crawford's questions and document requests.

25. On June 2, 2023, Indian Harbor brought a Complaint for Damages and Demand for Arbitration against Rapid (the "Arbitration Demand" and together with the Initial Mediation Demand and the Subsequent Mediation Demand, the "Demands"). The Arbitration Demand is attached hereto as Exhibit D. Indian Harbor, Swinerton and Rapid proceeded with arbitration before the American Arbitration Association (the "Arbitration").

26. On June 20, 2023, Rapid reissued its tender for a request for coverage to Defendant following receipt of the Demands.

27. On July 26, 2023, Counsel received a letter from Crawford requesting additional information. Counsel responded to this request on August 2, 2023.

28. On January 23, 2024, having not received a coverage determination from Defendant, Rapid reissued its tender.

29. On January 24, 2024, Crawford responded to Rapid with a preliminary analysis of the claim.

30. During the course of the Arbitration, Indian Harbor, Swinerton and Rapid engaged in significant discovery, including exchanges of documents, interrogatories, and depositions. As result of this discovery, additional information was ascertained related the damages to the Project and the reason for those damages. With respect to damages emanating from the improper drawings, the damage to the Project, including but not limited to the following, occurred:

(a) Creative's drawings did not provide the proper dimensions for materials to be used and installed at the Project, which resulted in the metal stud framing being significantly and materially off-center and thereby improperly installed. Because this stud framing was significantly off-center, resulting from the improper dimensions set forth on the drawings provided by Creative, the buildings' structural weight could not be properly distributed. Consequently, decking for second-story floors and roof decking sagged, which caused the concrete floors to sag and lose structural integrity. As a result, the second-story floors had to be floated and otherwise repaired.

(b) Creative's drawings specified the incorrect material. The Project contract required galvanized steel for all components. The Creative drawings specified red oxide steel, which was delivered to the Project jobsite. The red oxide steel caused heavier stage steel components of the Project and doors to be damaged by red oxide steel, including by corroding and being stained by contact with the red oxide. As part of the corrective work undertaken by Swinerton, portions of the Project other than Rapid's work had to be replaced or repaired because the incorrect steel was delivered to the Project.

(c) Creative's drawings did not accurately specify the manner in which the structural steel provided by Rapid would connect to the roll up doors for the storage units or the roofs of the Project buildings. As result, the connections provided by Rapid were not correct and were not seismically safe. As a result, doors had to be removed and reinstalled, and significant additional work was required to ensure the seismic safety of the roofs.

(d) Creative's drawings did not provide correct dimensions for the alignment of the studs for the different stories of two-story buildings. These studs are required to align to a tolerance of no more than ¼ of an inch. As constructed, studs were frequently out of alignment by more than six inches. The result of this misalignment was that the two-story buildings were structurally unsound and unsafe. Swinerton's Project Superintendent testified that this construction was structurally unsound, and if not corrected the building could collapse. Under applicable California law, where defective work or material must be removed or repaired to comply with building code or health and safety standards, its presence constitutes physical injury to the building that is covered under a commercial general liability insurance policy.

## THE INSURANCE POLICY

31. The Policy provides commercial general liability coverage to Rapid pursuant to the Certificate. The Policy's number is UDC-4234133-CGL-19.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

32. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 29 as if fully set forth herein.

33. The Policy is a written contract which was in full force and effect at the time of the breach.

34. Defendant is a party to the Policy as the insurer, and Plaintiff is a party to the Policy as an additional insured.

35. Plaintiff's status as an additional insured was based on an existing written subcontract that Plaintiff possessed with Creative for Creative's work on the Project. Plaintiff cannot locate a copy of the subcontract, but will attest under oath the subcontract was in the exact form that is attached hereto as Exhibit A.

36. Paragraph 10.4 of the subcontract states: "The Subcontractor shall cause the commercial liability coverage required by the Subcontract Documents to include: (1) the Contractor, the Owner, the Architect and the Architect's consultants as additional insureds for claims

caused in whole or in part by the Subcontractor's negligent acts or omissions during the Subcontractor's operations; and (2) the Contractor as an additional insured for claims caused in whole or in part by the Subcontractor's negligent acts or omissions during the Subcontractor's completed operations. Such additional insured status shall be on a primary and non-contributory basis, using ISO endorsement CG 20 10 11 85, or using both forms CG 20 10 and CG 20 37, with edition dates of 10/01, 07/04 or 04/13, and such additional insured coverage shall continue to remain in effect until the expiration of the period for correction of Work or for such other period for maintenance of additional insured status as specified in the Prime Contract."

37. Plaintiff has paid any required premiums and has complied with and fully performed all of the terms and conditions of the Policy applicable to Plaintiff.

38. Upon information and belief, the Policy requires, amongst other things, that:

(a) Defendant defend Plaintiff against any claims or relief that are covered or, at a minimum, potentially covered by the Policy; and

(b) Defendant investigates fully and pays or reimburses in full Plaintiff's defense and investigation costs arising out of or in connection with any claims covered or potentially covered by the Policy.

39. The Demands allege claims and seek relief that was covered, or, at a minimum, was potentially covered, by the Policy. Defendant was obligated to investigate, defend, and pay or reimburse Plaintiff in connection with the Demands.

40. Defendant has never fully investigated, defended, paid or reimbursed Plaintiff in connection with the Demands.

41. Defendant breached its contractual obligation to fully investigate, defend, pay or reimburse Plaintiff in connection with the Demands.

42. As a direct and proximate result of Defendant's failure to fully investigate, defend, pay or reimburse Plaintiff as required by the Policy, Plaintiff has incurred attorney's fees, costs, and site investigation expenses.

**SECOND CAUSE OF ACTION**

**TORTIOUS BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

43. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 29 as if fully set forth herein.

44. There is a covenant of good faith and fair dealing implied in every contract, including the Policy.

45. By issuing the Policy providing coverage to Plaintiff as an additional insured, Defendant assumed obligations of trust, confidence, and utmost good faith to Plaintiff. By having assumed these obligations, Defendant owed Plaintiff a duty of good faith and fair dealing, obligating Defendant to place Plaintiff's interests equal with or ahead of their own respective interests, and to do nothing to deprive Plaintiff of the benefits of the Policy.

46. Defendant sought to protect its own interests and breached its obligations to act fairly and in good faith toward Plaintiff by engaging in, but not necessarily limited to, the following conduct:

a. Failing to conduct a reasonable, timely, and unbiased investigation to fully evaluate Plaintiff's requests for an immediate and full defense for the Demands;

b. Failing to respond to Plaintiff's notice of claim for insurance coverage in a timely manner. For example, Defendant failed to timely acknowledge Plaintiff's April 1, 2022 tender within 15 days;

c. Failing to timely affirm or deny coverage within 40 days of tender;

d. Refusing to acknowledge and honor the obligations to defend Plaintiff under the Policy;

e. Basing coverage decisions on a desire to reduce and/or avoid obligations to Plaintiff; and

f. Failing and refusing to afford Plaintiff a full and complete defense against the Demands.

47. Importantly, the implied covenant of good faith and fair dealing, inherent in every insurance contract, obligates insurers to conduct a thorough and reasonable investigation of claims before denying them. Failure to do so constitutes bad faith.

48. Here, the sole exclusion to coverage on which Defendant has relied is one that could have been resolved easily by contacting either Creative or Plaintiff to determine the nature of the additional insured claim and the existence of a written contract between the parties. At no time prior to Plaintiff initiating this litigation did Hiscox ever request information relating to the assertion that no written contract exists

49. By engaging in the foregoing conduct, Defendant purposely deprived Plaintiff of the rights and benefits as an insured under the Policy.

50. Defendant's claims handling conduct and its denial of coverage to Plaintiff was and continues to be unreasonable and without good cause.

51. By the actions alleged herein, Defendant breached the implied covenant of good faith and fair dealing inherent in the Policy.

52. As a direct and proximate result of such breaches by Defendant, Plaintiff has been injured and has suffered and continues to suffer damage in an amount to be proven at trial. Such damages include, but are not limited to: investigative defense fees and costs, including attorney's fees, incurred in defending the Demands; legal costs incurred to obtain the benefits of Plaintiff's coverage as an insured; loss of use of funds; and other foreseeable damages in a total sum to be determined at the time of trial, including pre-judgment interest at the applicable legal rate.

53. In addition to the foregoing, Defendant's conduct was, and is, fraudulent, oppressive, or malicious, sufficient to justify an award of punitive damages. Defendant engaged in a fraudulent scheme to deprive the Plaintiff of the Policy's benefits, including, but not limited to: (1) either wholly failing to investigate the claims, or half-heartedly investigating the claims for insurance coverage, (2) failing to timely respond to Plaintiff's claims for coverage, (3) ignoring Plaintiff's requests for a coverage for an extended period of time, and (4) failing to compare the Demands with the language of the Policy to determine whether there was a potential for coverage.

This conduct is evidence that from the outset, Defendant never intended to provide Plaintiff with the Policy's benefits. Defendant's conduct was purposeful and calculated, and aimed to protect its own interests over Plaintiff's, thereby affecting Plaintiff's ability to manage its business, and contributed to, among other things, loss of use of funds and investigative legal fees and costs incurred in defending the Demands.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

54. On the First Cause of Action, that this Court determine and declare that Defendant is obligated to pay in full: (1) compensatory damages for all of the detriment proximately caused by Defendant's breach of contract, regardless of whether such detriment could have been anticipated or not; (2) the attorney's fees and costs incurred in this action to establish Plaintiff's right to policy benefits under the Policy; (3) pre-judgment interest, all according to proof at trial.

55. On the Second Cause of Action, that this Court determine and declare that Defendant pays in full to Plaintiff compensatory damages for all of the detriment proximately caused by Defendant's breach of the covenant of good faith and fair dealing, the attorney's fees and costs incurred in this action to establish Plaintiff's right to policy benefits under the Policy, pre-judgment interest, and punitive damages, all according to proof at trial.

56. On all Causes of Action: (1) such orders, including injunctive relief, as are necessary to effectuate this Prayer for Relief or to preserve this Court's jurisdiction over the parties and issues herein; and (2) such other and further relief as this Court deems just and proper.

Dated: August 29, 2025

Respectfully submitted,

MCGUINNESS & ASSOCIATES

/s/ Joseph G. McGuinness
Joseph G. McGuinness
Jeffrey S. Flashman

Attorneys for Plaintiff
*Rapid Building Solutions, LLC*

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by jury.

Dated: August 29, 2025

Respectfully submitted,

MCGUINNESS & ASSOCIATES

/s/ Joseph G. McGuinness
Joseph G. McGuinness
Jeffrey S. Flashman

Attorneys for Plaintiff
*Rapid Building Solutions, LLC*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document has been filed electronically on this 29th day of August 2025, and is available for viewing and downloading to the ECF registered counsel of record:

**Via Electronic Service/ECF**:

FREEMAN MATHIS & GARY, LLP
Albert K. Alikin (SBN 265119)
Albert.Alikin@fmglaw.com
Alexander G. Meissner (SBN 315437)
Alex.Meissner@fmglaw.com
550 South Hope Street, Suite 2200
Los Angeles, California 90071
Tel.: (213) 615-7000
Fax: (833) 264-2083
Attorneys for Defendants

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this August 29, 2025 at Torrance, California.

*/s/ Jeffrey S. Flashman*